Good morning, and may it please the court, Jeremy Warren on behalf of the appellant Juan Cruz-Valdivia. In this case, the district court was made an offer at the time of sentencing by Mr. Cruz to waive appeal in exchange for sentencing consideration after the court made some comments indicating that it was not at all likely to follow the plea agreement of the jointly recommended 21-month sentence. The district court said it was a good idea, wanted to take up the parties on the offer, and that it made a lot of sense to him, but that ultimately felt that it was constrained by this court's ruling in the Gonzales-Melchor case, which happened to have come from that same district court judge. And while there are some parallels between what happened in Gonzales-Melchor and what happened in Mr. Cruz's sentencing, there are tremendous differences, and I think that the differences should permit the court, should have permitted the court to accept the appellate waiver, the offer made by the defendant in that case, and take a valid appeal waiver. And, of course, I'm not going to go into that. Roberts. Our rule right now seems to be pretty, pretty, pretty clear. Why do we want to confuse why would we want to make it fuzzy? Well, I think that, yes. It's pretty clear. I mean, there are other reasons. Judge Kahneman, who is a district judge, and I was a district judge for a while, and I was a state court judge for a while where we actually did engage in plea negotiations. I always find that a bit strange. Right. It works very well. I used to make indicated offers. This will be my sentence. I will sentence you in this way if you plead guilty. And when I got to Federal court, you know, the Federal rules of criminal procedure make it pretty clear that a judge is to have no involvement in any kind of plea negotiations. Well, so you look at Rule 11, and Rule 11 clearly applies at the plea bargaining process. That is the point before which a guilty plea has been entered. And as Consuelos Melchor recognized that they analogize to the principles. Forgive me. I don't mean to cut off the court. They analogize to the principles, but they say that Rule 11 strictly does not apply. And so they're go ahead. And so the analogy is that the principles behind Rule 11 should constrain a district court from engaging in negotiation. But what they're focusing on is in the inherently coercive nature of a district court participating in such negotiations. And when you look at the Consuelos Melchor, what happened there, it's troubling. I mean, you have a take a step back for a second. You say, here's a defendant charged with illegal reentry. He follows his 1326D motion and says that my prior deportation was invalid. The district court sort of rules with him and says, yes, your due process rights were violated, however, there's no prejudice, so he denies the motion. Comes to sentencing, they do a bench trial to preserve the issue for appeal. And then come to sentencing, and Judge Byrne says, look, you seem like a good guy. I take you at your word. You want to go back to Mexico. You're not coming back here. Why don't we end this right now? You have a very small chance of prevailing in the Ninth Circuit on your D motion. End it now, and I'll give you some consideration. Talk to your lawyer. That's very coercive, and it's troubling because not only is it made sua sponte from the bench, not only is it without any opportunity or very minimal for the defendant to consult with his attorney, but the real problem there is that it's insulating the court from review. It's insulating the court's pretrial determination on a substantive motion from review. None of those principles apply in the Cruz-Valdivia case. We initiated it, so there can be no coercion. You can't coerce yourself. There's no ---- I understand all your arguments, but I don't really see much difference here where the defendant says, I'll waive my right to appeal, provided you don't sentence me more than 48 months. Well, and the court can go that way. The government wasn't party to the government. There wasn't an agreement between the defendant and the government. Of course not. No, that's correct. But what's different ---- You didn't ask to continue the hearing so you could go back and negotiate with the government, maybe bring in another plea agreement or amend the plea agreement or do something like that. Probably wouldn't have worked with that particular court, but you're correct. That's right, Your Honor. We did not do that. What's different here is that I think there is a distinction under Rule 11, which is that under Rule 11, there are certain types of plea agreements where the district court has to determine whether there's a validity of an appellate waiver, and beyond that, whether to accept the guilty plea or not and accept the waiver, particularly under 11C1A and 11C1C. The court has a role to play in determining the validity of that waiver. That's a little different than what happened in Gonzales, where the court is the one initiating it. Maybe that's a subtle distinction, but I think it's a legitimate one. And in this case, as Your Honor points out, it was a unilateral offer rather than a bilateral or a joint recommendation via plea agreement to the court. But also, if you look at what Gonzales-Melchor says, and maybe I'm wrong, but I don't think it stands for the proposition that one can never engage in any forms of discussions whatsoever between the court and the defendant at the time of the sentencing with regard to a waiver. I mean, the specific ruling of Gonzales-Melchor is that the appellate waiver will not be honored, that it was too coerced. Can I ask just a slightly different question? Why is the existence or nonexistence of an appellate waiver a permissible consideration for the court to even take into account when deciding how much time and custody to give a defendant? Well, right. And you look at the 3553 factors. It's not in there. I'll tell you that. It's not in there, but it is in there in a way. And here's what I mean by that in two ways. First of all, the 3553 factors include very broadly looking at the history and the characteristics of the defendant, the nature of defense, the need for punishment. And if you look at case law, the court – and I don't have a particular site, but there are many cases that say that contrition, acceptance of responsibility, preservation of judicial and governmental resources are legitimate sentencing concerns for the court. You look at – and then you turn to the sentencing guidelines, which are one of the 73553A factors, and they specifically include in there the sentence – 3E1.1, which is acceptance of responsibility, is a substantial reduction for someone basically preserving judicial resources. Yes, showing contrition, but also preserving the judicial resources. The fast-track program is up to a four-level departure for that. And there have been cases involving what we call super – there were downward departures that have been approved by this court for what we call extraordinary acceptance of responsibility. So while I agree with the court, it's not really explicitly listed under 3553 for as long as we've had the sentencing guidelines, the courts have considered one's willingness to forgo an appeal and to just accept responsibility as a legitimate mitigant. And I think that's part of the problem in this case, is that Judge Burns said, I'm legally prohibited from considering this. And the way I read that, and ask the court to, is to say that there's a mitigant factor there that the judge just said I cannot possibly – I can't consider it. And what I think should have happened – That wasn't – but it wasn't posed as a mitigating factor. I'm sorry. It wasn't – it wasn't posed as a mitigating factor. It was an offer. That's true. But the effect – An offer if – basically a commitment to 48 months, I'll waive my right to appeal. Well – Suppose the judge said no. Okay. Then it comes back and says, well, how about 52 months? See, but then you're engaged in a give-and-take. Well, but how's that? The judge just says no. Well, if the judge says no, then you go forward with sentencing and you have – Oh, then they can look at his lawyer and say, well, you know, and then come back and say, how about 52 months? Right. And if that – I'll waive my right to appeal if you don't sentence me to more than 52 months. I understand. But that would be, in essence, plea bargaining, maybe not through the words, but the implication from the court's reaction is bring me another offer. This is much cleaner than that. This is like going to Starbucks and buying a cup of coffee for 2 bucks. You don't negotiate there. You either give them the 2 bucks. What's that? I don't know. Sometimes. Yeah. They might give you a freebie. They do. Well, and ultimately, at the end of the day – so I do think what Your Honor's describing is more like, you know, buying a used car than buying the cup of coffee. But at the end of the day, you know, Mr. Cruz got no benefit from his guilty plea from the fast track. I mean, his sentencing range was, without acceptance of responsibility, without fast track, would have been lower or include the 70-month sentence that the court imposed. And the court – and this isn't an argument with regard to the Gonzales-Melchor. I'm sort of shifting. And I just wanted to touch on very quickly the substantive reasonableness of the sentence because, you know, the guidelines have changed. And the court's only concern here was deterrence. And really, by that, what he meant was he's got to get more time than the time before, which does carry some common sense. But the court just rejected and specifically said throughout – he said, forget the guidelines. And I don't think that – and maybe that's a figure of speech. But he did forget the guidelines. And so he's sentenced only to give the guy more time, which I think the problem with that is that his sentence was too long based on the sentencing commission reducing the guidelines under 201.2. Anyway, I'll stop. I'll give you a minute for rebuttal. Thank you. Let's hear from the government. Good morning. Kyle Hoffman from the United States. I'd like to follow up on Judge Piazza's point about why make fuzzy what's clear. And I'd like to do that by pointing to a point in the sentencing hearing where Mr. Cruz's counsel made this proposal. He said, I'm concerned that the court is going to be going above the guideline range that we agreed to. It was pretty clear that that was going to happen. And then he made this offer. And counsel said – and I don't fault him for saying this, but it's revealing. I don't want to sound like this is let's make a deal up here. And that's exactly the problem. It sounds like let's make a deal. Even if you try to draw this very fine distinction between we just confine it to the defendant makes an offer and the court accepts it. It still sounds like let's make a deal. And then I would segue from that point to the point that the case upon which Judge Piazza was a Sixth Circuit case called Markin, where precisely that happened. That is, the offer came from the defendant. The defendant's counsel kept saying, well, what if we do this? What if we give up this? How about that? Pretty much, as Judge Piazza described, a state court experience. And it all started from the defendant. And the judge in that particular case didn't say anything. Well, where is the coercion on our facts? Because I don't really see it. The defendant is basically just saying to the judge, look, I struck this deal whereby I was going to waive my right to appeal if you didn't sentence me more. What was it, more than 24 months? Yes. I think that's what it was. That was the guideline, yes. Right. And the defendant is just saying, look, you're going to give me more than that, and I otherwise could appeal. I will just tell you, I'm willing to basically double the upper limit of that. Right. If you're, you know, and you do what you've got to do, Judge. Right. But where is the coercion? I'm not going to stand before Your Honor and say that I think that that's necessarily coercive. It could be in other instances. It may not have been here. I don't think that the Gonzalez-Melker case relies solely on coercion as the reason for the rule. What's the, okay. That's what I thought the main rationale was. It's one of the rationales, undoubtedly. But it's also, as Mr. Warren pointed out, and I agree with him, it's insulating prior rulings or other rulings from appellate review, and it's the possibility of retaliation from the judge if somehow this bargaining doesn't work out. Those are the three stated reasons. Well, they talk about the integrity of the process. That's, I was going to say that there's. And they also talk about when the judge actually sentences, he's not really exercising full discretion. Correct. And I was going to step back and suggest that there's a broader concern about the integrity of the judicial process, which I think is captured in why I pointed to this comment about I don't want to sound like let's make a deal. It is something, there's something a little. Well, we did that in state court. I mean, it was, you know, in state court that's the way we operated. Let's make a deal. Right. And that's the way it works. Right. But it's different in the federal system. And when I actually, when I got to the federal system, I thought it was a much better system. But the state courts can't work that way. And that's within their rights, so to speak. Right. But this court has held the district court cannot participate in plea negotiations. Let me, let me, suppose this, suppose when, you know, when the judge gave a signal that he thought this joint recommendation was a bit low in light of prior convictions, suppose, you know, counsel and the government conferred and said, Your Honor, we would like to continue this because we want to go back and maybe see if we could amend the plea agreement. Well, Your Honor, I raised that point earlier with counsel. What would be wrong with that? I'm not sure anything would be. I'm not sure that it would have been wrong. Another way of saying this is I think it would be okay for counsel, for Mr. Cruz, to say to government counsel, Your Honor, we'd like a continuance. We'd like to go back and then we'd like to come back to Your Honor. Right. I don't think that I see anything wrong with that. I certainly don't in the case law. And then that would be an avenue open. And the other thing I'd like to say about the judicial integrity and the kind of the seemliness of this is, and Judge Pezzi, I think you raised this point, you can envision situations, and it's a reason for why we would like to have a clear rule rather than a fuzzy one. Yes. Where counsel for a defendant says, you know, we're willing to waive rights to appeal for 48 months. And there's nothing on the record but the judge raises his eyebrow or gestures with his hand saying come up a little. And it just leads down a road that doesn't, is not right according to this court and Gonzales-Melcore. And I think there's a reason to have that clear rule. Let me ask you, you know, one of the other arguments that they raised here was that although there was a joint recommendation for 21 months, the government was supposed to make that recommendation. The way the government did it was less than enthusiastic. Right. That's the breach of the plea agreement argument. Right. You read the transcript and that seems to be the case. Well, here's what I've suggested. Because the judge had said there's no, you know, there's no explanation for why, you know, what's the basis for this rather low sentence. I'd like to, a couple of points about that. One is, in this particular case, the district court only looked to the government once and asked government, used the attorney's name, what's your position, in effect. And the government said, we submit on our 21-month recommendation. And that was it. There were no further questions. The quotation that I've asked in vain for an explanation, there were actually no other questions of the government. How can you do this? What's the justification for it? So that's point one. Point two is, as counsel for Mr. Cruz recognized immediately in his sentencing memorandum and in the colloquy, this particular district court, as Mr. Warren put it, is loathe to accept deals in which previous sentences are higher than what he gets from the deal. He doesn't want to go back. And that's a long-running kind of issue. In fact, as counsel for Mr. Cruz said, I've had three in a row in front of Your Honor where this has happened. So when the court said there's no explanation, it was a broader comment about these deals, rather than one about this particular case, I would submit. And then the third thing I would say is that there are instances in which the government can oblige itself to provide reasons. That's the Benchmol case, and the Supreme Court says that, and so does Camarillo-Tello in this court. But that's not what the government agreed to in this case. So it did what it said it had to do. Well, I thought that this argument had been waived by virtue of the failure to make an objection at sentencing, as the plea agreement seemed to require. Yes, and the point I'd raise about that, Your Honor, is that there are two things. One, it seems the cases don't even require there to be a provision in the plea agreement for waiver to happen if you don't object. Here we've got not only the cases, but the plea agreement itself. And the second thing is that I think the cases, the most recent case I think was Whitney, says, well, we review it for plain error. And I just would submit there's not a breach at all, and certainly not plain error. Well, I don't know what this particular district court judge's practices are, obviously, because I've never practiced it in front of him, but I would imagine that if the government were to come in and speak somewhat enthusiastically about the recommended sentence, you know, might make the judge think twice and would avoid these situations that prompted the defendant to make an offer. I mean, I, you know, I'll be honest with you. You know, when I was there, I listened carefully to what the government had to say. Most district court judges do. I understand, Your Honor. And if the government had entered into an agreement that had said we're obliged to provide reasons in the court, that maybe we'd be in a situation more like Camarillo Tello or like Benchamal talks about, but we're not. And this is a little bit beyond the – I think you can see from the instances I pointed to in the record that it's just – I understand. The judge has a particular perspective on this. Well, one more question for you. Sure. I guess what troubles me now about the record we've got here in terms of the substantive reasonableness of the 70-month sentence is the judge clearly indicated that he thought 48 months would be enough if he were able to extract this appeal waiver, which to me is not a valid 35, 53-day factor. So how can we now say that nonetheless 70 months is substantively reasonable? Well, I think that the difference is where Your Honor points out. And I think the district court judge thought it was something that he could consider, all things considered, so to speak. And so he's not undercutting himself on his point of view by saying I would do 48 months if there was an appellate waiver. He says, yeah, I think 48 months sounds great if I could have this thing from you, but the Ninth Circuit told me I can't get it. Right. But I think that I'm just trying to identify where the difference of levels – the reason for that is between Your Honor and the district court. I think he thinks, no, that's fine. It's something you can consider. So unless there are further questions. Thank you, counsel. You have a minute for rebuttal. I understand, and I'll speak quickly. I actually agree with the Court. I do think that the Court indicated that 48 months would have been reasonable. I think we're – Your Honor and I may disagree. I think that the Court can't consider an appellate waiver, should have been able to. So if 48 months was reasonable, then this is an unreasonable sentence. But going back to the breach argument, you know, it's waived in the sense that it's subject to plainer review. I don't think it's waived in the sense that it was an intentional relinquishment of a right, and we can't even talk about it here. So the question is, did the government present a united front at sentencing? The Court – maybe it was rhetorical, but it asked. It said, give me a reason, give me a reason, give me a reason. And the government just – they said seven words in the entire sentencing. We submit on our 21-month recommendation. That left us a little bit high and dry, and I do think that the Court can find that a breach. With regard to the other issue under Gonzales-Melchor, you know, bright-line rules are nice, but they're not always necessary. I mean, and that's what courts are for. There are times where there are issues that are constitutionally correct that make it a little bit troubling or difficult for courts. And I would just say in this context, this isn't going to open a floodgates of people looking at a judge and trying to read facial expressions as to how far they should push up their offer of an appellate waiver. This is a very limited circumstance. It came up – I've never seen it happen before. It's very different from what happened in Gonzales-Melchor. And to – I think that to affirm here would be to extending Gonzales-Melchor in a way that denies the defendants an arrow and a quiver, and the same for a judge, and an opportunity to consider a mitigant under the 3553A rubric. Thank you. Thank you, counsel. We appreciate your arguments. The matter will be submitted at this time.
judges: Conlon, Paez, Watford